IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

KEVIN THOMAS                                                                    PLAINTIFF

VERSUS                                        CIVIL ACTION NO.  5:07cv160-DCB-MTP

CONSTANCE REESE, ET AL.                                               DEFENDANTS

REPORT AND RECOMMENDATION

THIS MATTER is before the court on a Motion to Dismiss or, in the Alternative, for

Summary Judgment [29] filed by defendants ("Motion for Summary Judgment") and a Motion to

Strike [34] the Motion for Summary Judgment filed by plaintiff ("Motion to Strike").  Having

considered the submissions of the parties and the applicable law, the undersigned recommends

that the Motion to Strike be denied, the Motion for Summary Judgment be granted, and

plaintiff's complaint be dismissed with prejudice.[1]

Factual Background

Plaintiff Kevin Thomas is currently serving a 180 month sentence at the Federal

Correctional Complex in Yazoo City, Mississippi ("FCC Yazoo City") - Medium Facility on a

conviction of possession of a firearm by a convicted felon.  His projected release date is

September 22, 2013.  *See* Exhibit 1 to Motion for Summary Judgment.  Plaintiff filed this

---

[1]  Also pending before the court is a motion [58] to strike plaintiff's responses and replies - specifically docket entries 50, 53, 54, 55, 56 and 57 ("Motion to Strike").  The basis of the Motion to Strike is that at least some of these documents are essentially sur-replies to the Motion for Summary Judgment, which plaintiff filed without leave of court and in violation of the Local Rules. The court agrees with defendants that certain of these documents are unauthorized.  However, applying a rule of lenity, the court has considered all of plaintiff's pleadings in issuing this Report and Recommendation.  Therefore, as the court is recommending that the Motion for Summary Judgment be granted, the Motion to Strike should be denied as moot.

*Bivens*[2] action *pro se* on August 16, 2007.  In his Amended Complaint [23], filed on December 12, 2007, plaintiff asserts claims for deprivation of property and denial of legal access against defendants in their individual capacities.[3]  Specifically, plaintiff alleges that on January 4, 2006, he contacted defendants Southerland and Pleasant and advised them that he wished to file a grievance alleging that he was being deprived of medical treatment.[4]  According to plaintiff, Southerland and Pleasant instructed him to wait to file his grievance until they had the opportunity to attempt to informally resolve it.  Plaintiff then claims that on that same day, Southerland and Pleasant conducted a search of his cell and removed and destroyed six boxes of typewriter ribbon, three boxes of typewriter eraser ribbon, and a Civil Jury Trial manual, all belonging to him.  Plaintiff claims that defendants asked him why he possessed these materials, and he told them he intended to file a lawsuit regarding his medical treatment claim.  *See* Amended Cplt. ¶¶ 7-9, 11-25; Plaintiff's Amended Response to Motion for Summary Judgment [52] at 9.[5]

---

[2] *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  A *Bivens* action mirrors a civil rights action brought under 42 U.S.C. § 1983, the difference being that a *Bivens* action applies to alleged constitutional violations by federal actors, while a section 1983 action applies to alleged constitutional violations by state actors.  *See Izen v. Catalina*, 398 F.3d 363, 367 n.3 (5th Cir. 2005).

[3] "[A] *Bivens* action may be maintained against a defendant only in his or her individual capacity, and not in his or her official capacity." *Pollack v. Meese*, 737 F. Supp. 663, 666 (D. D.C. 1990); *see also Gibson v. Federal Bureau of Prisons*, 121 Fed. Appx. 549, 551 (5th Cir. Dec. 30, 2004).

[4] Plaintiff filed a response to court order on October 31, 2007  [10] ("Response to Court Order"), clarifying that he was not pursuing a denial of medical treatment claim in this lawsuit.

[5] By separate Text Order dated July 30, 2008, the court granted plaintiff's motion [51] to amend the memorandum in support of the motion to preclude summary judgment.  In that motion, plaintiff sought leave to amend the 54-page brief [36] he filed on March 19, 2008 in response to the

According to defendants, on January 4, 2006, staff were conducting a "shakedown search" of all of the inmates' cells in plaintiff's housing unit.  Southerland, a Unit Manager, searched plaintiff's cell and found several items that appeared to be contraband:  what seemed to be an excessive amount of typewriter ribbons and eraser ribbons, copies of Presentence Investigation Reports,[6] legal materials belonging to other inmates,[7] and a radio.[8]  Southerland called over Pleasant, a Counselor, to show her what she had found.  The typewriter ribbons, typewriter eraser ribbons, PSRs and other inmates' legal work were then forwarded by Southerland to the Special Investigations Supervisor to be reviewed in order to determine what

---

Motion for Summary Judgment, to conform to the page limit set forth in the Local Rules.  The Motion to Amend was filed in response to the court's denial [46] of plaintiff's motion [37] for leave to file excess pages, filed on the same day as plaintiff's 54-page brief.  In conjunction with the Motion to Amend, plaintiff filed a 30 page brief [52].  Although the court granted the Motion to Amend, out of an abundance of caution the court has considered both of plaintiff's briefs in issuing this Report and Recommendation.

[6]  Pursuant to BOP Program Statement 1351.05, Release of Information, "[i]nmates are prohibited from obtaining or possessing photocopies of their PSRs...Inmates violating this provision are subject to disciplinary action."  This prohibition was put into place for "safety and security reasons" - specifically, that many PSRs contain information regarding an inmate's government assistance, financial resources and community affiliations; that inmates pressure other inmates for a copy of their PSRs to learn if they are informants, gang members or have financial resources, and inmates are threatened and assaulted for providing, or withholding, this information. There is, however, a process in place for inmates to be able to access and review their PSRs.  *See* Exhibit 3 to Motion for Summary Judgment.

[7]  Subject to limitations imposed by the Warden "in the interest of institution security, good order or discipline," inmates are allowed to possess other inmates' legal materials "while assisting the other inmate in the institution's main law library and in another location if the Warden so designates."  *See* BOP Program Statement 1315.07, Legal Activities, Inmates (Exhibit 6 to Motion for Summary Judgment).

[8]  Neither Southerland nor Pleasant recalls plaintiff having a Civil Trial Manual.  Pleasant remembers only the typewriter ribbons, eraser ribbons and the PSRs.  *See* Southerland Decl. ¶ 3; Pleasant Decl. ¶¶ 3-4.

plaintiff could have.  The radio was determined to belong to plaintiff and was returned to him later that day.  *See* Exhibit 4 to Motion for Summary Judgment; Declaration of Julie L. Southerland (Exhibit 15 to Motion for Summary Judgment) ¶¶ 2-4; Declaration of Zaneta R. Pleasant (Exhibit 16 to Motion for Summary Judgment) ¶¶ 2-3; Amended Response to Motion for Summary Judgment at 10.  As far as Southerland could recall, the typewriter ribbons, eraser ribbons and other inmates' legal work were returned to plaintiff on January 17, 2006, when confiscated property was returned to several other inmates in the unit.  The PSRs were destroyed. Southerland denies that she destroyed any property belonging to plaintiff that he was allowed to have.  Pleasant denies destroying any of plaintiff's property, and denies knowledge that any permissible property was taken from plaintiff and not returned to him.  *See* Southerland Decl. ¶ 5; Pleasant Decl. ¶ 5.  Warden Reese was not involved in conducting searches of inmates' cells, nor was she involved in the confiscation of plaintiff's property.  *See* Declaration of Constance Reese (Exhibit 14 to Motion for Summary Judgment)  ¶ 3.

Plaintiff asserts that by taking and destroying his property, defendants "created an impediment which prevented [him] from utilizing the necessary materials needed to petition his cause of action in Federal court" relating to the alleged deprivation of medical treatment. Plaintiff further asserts that because he was unable to use his confiscated property and because there was allegedly a "complete breakdown" in the electronic legal research computer system, he was deprived of access to the courts.  Plaintiff seeks compensatory and punitive damages.  *See* Amended Cplt. ¶¶ 11-13, 17, 22, 25; Response to Court Order ¶¶ 5-6, 9, 12-16, 19, 21.

<u>Analysis</u>

<u>Motion to Strike</u>

Plaintiff has moved to strike the Motion for Summary Judgment on the ground that defendants allegedly incorporated numerous misrepresentations in the declarations submitted in support of the motion. *See* Motion to Strike at 4. Plaintiff appears to be arguing that because the alleged misrepresentations provide an insufficient defense to defendants, the Motion for Summary Judgment should be stricken.

Rule 12 of the Federal Rules of Civil Procedure[9] allows a court to "strike from a pleading any insufficient defense." Motions to strike defenses are generally disfavored and rarely granted. *See*, *e.g.*, *U.S. v. Benavides*, 2008 WL 362682, at * 2 (S.D. Tex. Feb. 8, 2008) (citations omitted). However, they may be granted where the defense asserted is insufficient as a matter of law. *McCullough v. Owens Enters., Inc.*, 2008 WL 2374245, at * 3 (S.D. Miss. June 5, 2008) (*citing Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982)). If there is a question of law or fact regarding a particular defense, a court must deny a motion to strike. *Benavides*, 2008 WL 362682, at * 2 (citation omitted). Whether or not to grant a motion to strike is within the court's discretion. *Id.* (citation omitted).

The defenses raised in the Motion for Summary Judgment are: 1) failure to exhaust administrative remedies; 2) deprivation of property cannot support a constitutional violation where there is an adequate remedy at law; 3) plaintiff's assertions do not demonstrate the kind of harm a prisoner must show in order to support a claim of denial of access to the courts; 4)

---

[9] Plaintiff also references Fed. R. Civ. P. Rule 9(b) in his motion. That rule - which sets forth pleading requirements for fraud claims - is plainly inapplicable, as defendants have not alleged fraud as a claim or a defense.

defendant Reese cannot be held liable where there was no personal involvement; and 5) qualified immunity.  These defenses are not insufficient; to the contrary, they clearly have merit, as the court is recommending that the Motion for Summary Judgment be granted on several of these grounds.

Moreover, plaintiff has not established that the statements in question were, in fact, misrepresentations.  For example, plaintiff takes issue with Southerland and Pleasant's statement in their response to his informal grievance that "there was no personal property taken" from him. As clarified by Southerland in a Supplemental Declaration [ 48-2], what was meant by that statement was that none of plaintiff's personal property was kept, not that there was no personal property taken on January 4, 2006.  *See* Motion to Strike at 5-6.  Plaintiff's arguments regarding other statements he considers to be misrepresentations - many of which are allegedly "misleading" arguments made by defendants' counsel in the Motion for Summary Judgment - similarly have no merit.  Accordingly, the Motion to Strike should be denied.

Motion for Summary Judgment

Standard

Because the defendants have submitted matters outside the pleadings with their Motion to Dismiss or, in the Alternative, for Summary Judgment [29], the motion should be characterized as a motion for summary judgment.  *See* Fed. R. Civ. P. 12(b); *Young v. Biggers*, 938 F.2d 565, 568 (5th Cir. 1991).  Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Summary judgment is proper  "where a party fails to establish the

existence of an element essential to his case and on which he bears the burden of proof."
*Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir. 1988).  "A complete
failure of proof on an essential element renders all other facts immaterial because there
is no longer a genuine issue of material fact."  *Id.*

 This court may grant summary judgment only if, viewing the facts in a light most
favorable to the plaintiff, the defendant demonstrates that there is no genuine issue of material
fact and that he is entitled to judgment as a matter of law.  *Woods v. Smith,* 60 F.3d 1161, 1164
(5th Cir. 1995).   If the defendant fails to discharge the burden of showing the absence of a
genuine issue concerning any material fact, summary judgment must be denied.  *John v. State of
Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985).  The existence of an issue of material fact is a
question of law that this court must decide, and in making that decision, it must  "draw
inferences most favorable to the party opposing the motion, and take care that no party will be
improperly deprived of a trial of disputed factual issues."  *Id.* at 712 (quoting *U.S. Steel Corp. v.
Darby*, 516 F.2d 961, 963 (5th Cir. 1975)).

 There must, however, be adequate proof in the record showing a real controversy
regarding material facts.  "Conclusory allegations," *Lujan v. National Wildlife Federation*, 497
U.S. 871, 902 (1990), unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir.
1994), or the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A.*, *Inc.*, 14 F.3d 1082,
1086 (5th Cir. 1994), is not enough to create a real controversy regarding material facts.  In the
absence of proof, the court does not "assume that the nonmoving party could or would prove the
necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis
omitted).

Claims against Warden Reese

It is well-settled that Section 1983 does not "create supervisory or *respondeat superior* liability." *Oliver v. Scott,* 276 F.3d 736, 742 & n.6 (5th Cir. 2002); *see also Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (citations omitted). "To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant." *Jolly v. Klein*, 923 F.Supp. 931, 943 (S.D. Tex. 1996) (*citing Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)).

It is clear from the record that Warden Reese had no personal involvement in the confiscation of plaintiff's property. Indeed, her only involvement in this matter is that she signed a response to a Request for Administrative Remedy from plaintiff, which was prepared for her signature by a member of her staff. Warden Reese did not personally investigate the issues raised by plaintiff, nor did she prepare the response. Warden Reese averred that she would have briefly reviewed the draft response, and if it seemed responsive to the inmate's concerns, she would have signed it.[10]  *See* Reese Decl. ¶ 3. The fact that Warden Reese responded to plaintiff's administrative remedy appeal is insufficient to establish personal involvement. *See*, *e.g.*, *Mosley v. Thornton*, 2005 WL 1645781, at * 5 (E.D. La. June 20, 2005) ("Plaintiff merely alleges that the Warden was responsible for Thornton and the medical department and that he responded to plaintiff's appeal...However, the fact that the Sheriff responded to plaintiff's appeal is insufficient to support a constitutional claim against the Sheriff."); *Anderson v. Pratt*, 2002 WL

---

[10] Warden Reese is responsible for the general supervisory management and oversight of the operation of the entire complex at FCC Yazoo City. She is not involved in the day-to-day operation of individual housing units, cell searches and confiscation from inmates of items that may be contraband, nor does she personally investigate and respond to the hundreds of Requests for Administrative Remedy filed every year by inmates at FCC Yazoo City. *See* Reese Decl. ¶¶ 3-4.

1159980, at * 3 (N.D. Tex. May 29, 2002) (Warden's review and denial of inmate's grievance did not show personal involvement in deprivation of constitutional rights); *Alexander v. Fed'l Bureau of Prisons*, 227 F.Supp. 2d 657, 665-66 (E.D. Ky. 2002) (Warden's signing an administrative remedy response prepared by staff did not establish constitutional violation); *Lamkey v. Roth*, 1997 WL 89125, at * 5 (N.D. Ill. Feb. 26, 1997) (Warden's signing of grievance report "concurring in the grievance officer's finding" insufficient to establish personal involvement).

Accordingly, in light of plaintiff's failure to establish any personal involvement by Warden Reese in the alleged constitutional violations, plaintiff's claims against Warden Reese should be dismissed with prejudice.

Denial of Access to the Courts Claim

Defendants argue that plaintiff has failed to exhaust administrative remedies with respect to this claim.  42 U.S.C. § 1997e(a) requires prisoners to exhaust any available administrative remedies prior to filing suit under 42 U.S.C. § 1983.  *See also Woodford v. Ngo*, 126 S.Ct. 2378, 2382 (2006) ("[P]roper exhaustion of administrative remedies is necessary"); *Johnson v. Ford*, 2008 WL 118365, at * 2 (5th Cir. Jan. 14, 2008) (stating that the Fifth Circuit takes "a strict approach" to the PLRA's exhaustion requirement) (*citing Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)).

Defendants argue that because plaintiff never raised a claim of denial of access to the courts during the administrative remedy process, that claim is unexhausted and, therefore, should

be dismissed.[11]  As a general matter, a prisoner "need not present legal theories in his grievances," since "the purpose of the exhaustion requirement is to give prison administrators an opportunity to address a problem, and they can do this whether or not the prisoner tells them the constitutional provisions that the problem implicates."  *Johnson v. Johnson*, 385 F.3d 503, 517-18 (5th Cir. 2004) (citations omitted).  Nevertheless, although a grievance does not need to contain "a full-fledged legal theory," it must "alert prison officials to a problem and give them an opportunity to address it."  *Id.* at 518.  Thus, the question is whether plaintiff's references to his legal materials being wrongfully taken put prison officials on notice of his claim of denial of legal access.  The court need not resolve that issue, however, because plaintiff's claim fails on its

---

[11]   The BOP's Administrative Remedy Program ("ARP") is set forth at 28 C.F.R. § 542.10 *et seq.*  The first step of the ARP process is the informal presentation of the issue to prison staff.  If that does not resolve the issue, the inmate must submit a formal Administrative Remedy Request.  If the inmate is not satisfied with the warden's response to that request, he or she may submit an appeal to the appropriate BOP Regional Director, and may then appeal that decision to the General Counsel.  That step "is the final administrative appeal" and its completion constitutes exhaustion of administrative remedies.  Following the incident in question, plaintiff filed a Request for Administrative Remedy, Attempt at Informal Resolution, in which he complained that Southerland had wrongfully confiscated his "legal and personal property."  Plaintiff did not identify what property was allegedly taken, nor did he assert that he had been unable to prepare court papers or pleadings as a result of the property being taken.  Oddly, the relief requested by plaintiff was not the return of his allegedly confiscated materials, but a transfer back to the Northeastern United States.  The staff response, signed by Southerland and Pleasant, denied plaintiff relief.   Plaintiff then appealed, complaining that his legal and personal property had been taken and stating: "I am seeking compensation from a tortfeasor for conversion and trespass for civil theft of an inmate's property."  Again, plaintiff said nothing about denial of access to the courts nor did he say anything about his inability to access the law library.  Plaintiff then appealed Warden Reese's denial of relief to BOP Regional Counsel, where for the first time, he identified what property was allegedly taken (although he did not mention a Civil Trial Manual).  Still, plaintiff did not say anything about the alleged denial of access to the courts or the law library.  The appeal was denied, and plaintiff then appealed to the BOP's National Inmate Appeals, Central Office, who upheld the earlier decision on December 7, 2006 and suggested that he pursue the matter via a tort claim under the Federal Tort Claims Act ("FTCA").  Plaintiff did file a tort claim with the BOP on January 3, 2007.  It was denied on June 22, 2007, on the ground that there was no evidence to support it.  *See* Exhibits 7, 9, 10, 11 and 12 to Motion for Summary Judgment.

10

merits, as discussed below.

Plaintiff alleges by taking and destroying his property, defendants "created an impediment which prevented [him] from utilizing the necessary materials needed to petition his cause of action in Federal court" relating to the alleged deprivation of medical treatment. *See* Amended Cplt. ¶¶ 22, 25; Response to Court Order ¶¶ 5-6, 9, 12, 21. To prevail on an access-to-the-courts claim, plaintiff must show an "'actual injury' - that is, 'actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim.'" *Lewis v. Casey*, 518 U.S. 343, 349-51 (1996) (citation omitted); s*ee also Donnelly v. Edwards*, 95 Fed. Appx. 702, 703 (5th Cir. Apr. 23, 2004) (upholding dismissal of access-to-the-courts claim where plaintiff did not establish that he was unable to proceed in a case as a result of alleged delays and denials of legal assistance); *Cartner v. Lowndes Cty.*, 89 Fed. Appx. 439, 442 (5th Cir. Jan. 23, 2004), *cert. denied*, 542 U.S. 923 (2004)  (affirming dismissal of access-to-the-courts claim where plaintiff failed to explain "how his position as a litigant was adversely affected"); *Richards v. Johnson*, 115 Fed. Appx. 677 (5th Cir. Oct. 20, 2004) (upholding dismissal of access-to-the-courts claim where plaintiff "alleged no fact showing that he has been prejudiced in his ability to prepare and transmit a necessary legal document to a court.").

Plaintiff argues that he was prejudiced in that he was prevented from being able to file in federal court his Eighth Amendment claim based on the alleged denial of medical treatment, and that the claim was eventually barred by the statute of limitations. *See* Response to Motion for Summary Judgment [36] at 15-17, 29, 39-40; Amended Response to Motion for Summary Judgment at 11-13, 16-17; Plaintiff's Declaration [34-4] ¶¶ 4-5; Response to Court Order ¶¶ 5-6, 9.  This argument is unavailing.  Plaintiff arrived at FCC Yazoo City on October 26, 2005.  *See*

11

Amended Cplt.¶ 6; Exhibit 1 to Motion for Summary Judgment.  Thus, the earliest the statute of

limitations will expire on his claims regarding denial of medical treatment or any other alleged

Eighth Amendment violations at FCC Yazoo City appears to be October 27, 2008.[12]

Accordingly,  plaintiff still has approximately three months to file any such lawsuits and,

therefore, he cannot demonstrate prejudice on this basis.  *See*, *e.g.*, *Ford v. Foti*, 52 F.3d 1068

(5th Cir. 1995) (no prejudice where prisoner could file section 1983 lawsuit within limitations

period); *Shelton v. Stringer*, 2005 WL 1318829, at * 1 (S.D. Miss. June 2, 2005) (plaintiff fails to

demonstrate prejudice where statute of limitations has not run on claims he asserts he was unable

to bring).[13]  Moreover, as discussed below, plaintiff has not established that he was denied access

---

[12] There is no federal statute of limitation for *Bivens* actions; therefore, federal courts borrow the forum state's general personal injury limitations period.  *Brown v. Nationsbank Corp.*, 188 F.3d 579, 590 (5th Cir. 1999) (citation omitted); *James v. Federal Bureau of Prisons*, 2008 WL 686419, at * 4 (E.D. Tex. Mar. 10, 2008).  The Mississippi Supreme Court has held that in Section 1983 actions, courts should apply the residual three-year statute of limitations for personal injury actions set forth in Miss. Code Ann. § 15-1-49(1).  *Giles v. Stokes*, 2008 WL 2806048, at * 2 (Miss. Ct. App. July 22, 2008) (*citing Bankston v. Pass Rd. Tire Ctr., Inc.*, 611 So. 2d 998, 1003-04 (Miss. 1992)).  Plaintiff claims that he was denied treatment by medical staff at FCC Yazoo City for "a severe intermitten [sic] upper right quandrant abdominal internal disfunction [sic] and a  "Helicobacter pylori bacterial infection" that were allegedly caused by contaminated water and uncooked food at FCC Yazoo City.  *See* Amended Cplt. ¶¶ 11-14; Amended Response to Motion for Summary Judgment at 8; Plaintiff's Decl. ¶ 3.  Thus, the earliest plaintiff's cause of action could have accrued was on October 26, 2005 - the day he arrived at FCC Yazoo City - and the earliest the statute of limitations will expire is October 27, 2008 (October 26, 2008 falls on a Sunday).

[13] The only statute of limitations argument made by plaintiff throughout his pleadings relates to his Eighth Amendment claim regarding alleged denial of medical treatment.  Suddenly, for the first time, plaintiff argued in his "Supplemental Reply" in opposition to the Motion for Summary Judgment [55] (which, as noted *supra*, was not authorized by the court) that his allegation of prejudice relates not to a *Bivens* Eighth Amendment claim, but rather to an "FTCA medical deprivation claim" instead.  Plaintiff states that "it could be argued that based upon his intentions he sought to file his medical deprivation claim against the Federal Bureau of Prisons through usage of FTCA in Federal court."  Plaintiff argues that he could not file his "FTCA medical deprivation claim" within the required six month period following denial of his FTCA claim on June 22, 2007 because of the alleged deprivation of his property.  *See* Supplemental Reply at 4, 16.  "Arguments

to the courts on any other grounds, either.

The alleged confiscation of plaintiff's typewriter ribbon and eraser ribbon cannot establish the requisite prejudice, as there is no requirement that court documents be typed. *See Eisenhardt v. Britton*, 478 F.2d 855 (5th Cir. 1973) ("the availability of a typewriter is not necessary for judicial review"); *Stubblefield v. Henderson*, 475 F.2d 26 (5th Cir. 1973) ("an inmate has no federally protected right to the use of typewriters to prepare legal writs").[14]  With respect to the Civil Trial Manual, neither Southerland nor Pleasant recalls plaintiff having one. *See* Southerland Decl. ¶ 3; Pleasant Decl. ¶ 3.  Notably, plaintiff did not mention the Civil Trial Manual in any of his administrative grievances, nor was it mentioned in the incident report prepared right after the incidents in question.  Indeed, the first time it was mentioned was in plaintiff's FTCA claim.  Nevertheless, even assuming that there was a Civil Trial Manual confiscated by Southerland and Pleasant, plaintiff has not demonstrated why the absence of this one book hindered his access to the courts, particularly where, as discussed below, the resources of the electronic law library ("ELL") were available to plaintiff.[15]

---

raised for the first time in a reply brief, even by pro se litigants...are waived." *U.S. v. Jackson*, 426 F.3d 301, 302 n.2 (5th Cir. 2005) (citation omitted).  At any rate, even if this argument had not been waived, it would fail on its merits.  The instant lawsuit was filed on August 16, 2007, less than one month after plaintiff's FTCA claim was denied.  Thus, at the time this lawsuit was filed, plaintiff still had approximately five months to file a federal lawsuit regarding the denial of his FTCA claim.

[14]   Moreover, there are numerous typewritten documents in the record prepared by plaintiff from January through December 2006 demonstrating that he did, in fact, have the ability to prepare typewritten documents after his typewriter ribbons were confiscated.  *See, e.g.*, Joint Appendix in Support of Plaintiff's Motion to Strike Vol. I [34-2] at 36, 39, 40, 41, 43, 44, 47-49, 53-54, 59, 61.  The instant lawsuit - in which all of plaintiff's written submissions have been typewritten - was filed in August 2007.

[15]   In his Supplemental Declaration [56], plaintiff argues that the Civil Trial Manual contained information and materials that the electronic law library was lacking - specifically, jury

Defendants have submitted a declaration from Gerald D. Bratcher, Supervisor of Education at FCC Yazoo City, whose duties include maintaining and supervising the inmate law library.  According to Mr. Bratcher, inmates at the medium security institution, including plaintiff, had a wide range of legal materials available to them in the form of an Electronic Law Library ("ELL").  These materials included:  federal reporters, statutory materials, rules and regulations, BOP program statements, numerous legal treatises, various legal publications and a law dictionary.  *See* Exhibit 17 to Motion for Summary Judgment.  Plaintiff asserts, however, that during the relevant time period there was a "complete breakdown" in the ELL, with no alternative arrangements to permit him to research and prepare legal documents, which further deprived him of access to the courts.  *See* Response to Court Order ¶¶ 6, 9, 12-16, 19, 21.

The touchstone of a claim of denial of access to the courts is whether inmates have "a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions."  *Lewis*, 518 U.S. at 356-57.  Thus, plaintiff must show not that a law library was somehow inadequate or deficient in a theoretical sense, but must show that he was, in fact, deprived of access to the courts.  "[T]he Constitution does not require that prisoners (literate or illiterate) be able to conduct generalized research, but only that they be able to present their grievances to the courts - a more limited capability that can be produced by a much more limited degree of legal assistance."  *Id.* at 359; *see also Jones v. Greininger*, 188 F.3d 322, 325 (5th Cir. 1999) ("The right of access to the court 'does not afford prisoners unlimited access to prison law

instructions, information about how to prepare for a deposition and a proposed voir dire.  None of this material would be necessary for filing a complaint, however.

libraries.'") (citation omitted).[16]  Based on the record in this case, plaintiff clearly had ample

access to a law library.  Indeed, plaintiff has vigorously and exhaustively litigated the instant

lawsuit, filing numerous pleadings and briefs from the commencement of the case in August

2007 until the present.  That the ELL did not work perfectly or near perfectly does not establish a

constitutional violation - and certainly not one by Southerland and Pleasant, who are accused of

confiscating a single law book from plaintiff.

A careful reading of plaintiff's Declaration defeats his claim, as it establishes that his use

of the law library materials was sometimes restricted, but not denied, and that he received

assistance on numerous occasions from library staff members.  For example, plaintiff claims that

his legal research and retrieval was restricted from January to June 2006, because the "search

engine would not pick-up, or allow retrieval of case authorities," and plaintiff "had to await the

computer technician to service the computerized system."  Plaintiff also claims that on several

occasions during this time period he "had to wait" to utilize the system either because he was

recalled early to his housing unit or staff members were absent.  *See* Plaintiff's Decl. ¶¶ 9-10.

It is true, as stated by Mr. Bratcher, that there were times when the ELL was not available

because of system malfunctions or scheduled updating of the system, but these outages were

infrequent and intermittent.  Indeed, Mr. Bratcher's recollection was that the average time the

ELL would have been unavailable from January to June 2006 was 2-3 days per month, and no

---

[16]  In *Jones*, the court found that "[l]imiting Jones to five hours of library time a week will
not result in a violation of his constitutionally protected right of access to the court."  188 F.3d at
325.  The court discussed *White v. Gregory*, 87 F.3d 429 (10th Cir. 1996), where it was held that an
inmate having only two hours per week of law library access had suffered no constitutional violation,
and noted that in *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court approved one day per
month (8 hours) of law library access.  *Id.* at 325-26.

15

more than about 3 days in a row during that time period.  Mr. Bratcher explained that when the

ELL was "off-line" for more than a brief period, arrangements were made to provide cases and

other legal research materials to the inmates from the physical law library.[17]  For example,

plaintiff has submitted a copy of a notice dated July 9, 2007 stating that the ELL would be "down

until further notice."  *See* Exhibit C-1 to Response to Court Order.  After this date, plaintiff and

other inmates were given an opportunity to request and receive within 24 hours necessary legal

materials, and plaintiff took advantage of this procedure on several occasions.  *See* Exhibit 13 to

Motion for Summary Judgment (Inmate Requests to Staff Forms from 8/14/07 to 11/20/07);

Bratcher Decl. ¶ 6.  As the instant lawsuit was filed in August 2007, plaintiff's claim that he was

denied access to the courts during this time period clearly has no merit.

Plaintiff also argues that his ability to file his Eighth Amendment lawsuit was disrupted

because of several prison uprisings that occurred in June, August and September, 2007, resulting

in the institution being placed in lockdown.  Plaintiff's Decl. ¶¶ 13-15; Exhibits D1 & D2 to

Response to Court Order; Amended Response to Motion for Summary Judgment at 16.  Again,

plaintiff's lawsuit was filed in August 2007, which undercuts any contention that plaintiff was

---

[17]  Plaintiff claims that Mr. Bratcher's declaration is false, and has submitted declarations
from several inmates purportedly establishing that the ELL was unavailable for long stretches of time
during 2006 and 2007, and that the substitute materials provided by library employees were
insufficient for inmates' legal research needs.  *See* Joint Appendix vol. II [34-3].  As pointed out by
defendants, there are significant problems with many of these declarations - for example, several of
the inmates who claim that the ELL was unavailable during a certain time period were either not yet
at FCC Yazoo City, or arrived there at the very end of the time period.  Thus, the probative value of
these declarations is dubious. At any rate, even if these declarations are true, they fail to establish
that plaintiff was denied access to the courts.

denied access to the courts during this time period.[18]

Finally, petitioner claims that Southerland threatened him that he would be placed in administrative detention if he continued to try to get his property back.  *See* Response to Motion for Summary Judgment at 10.  It is unclear how this relates to plaintiff's denial of access to the courts claim.  At any rate, even if this alleged threat was made, it would not be a constitutional violation.  *See, e.g., Brown v. Craven*, 106 Fed. Appx. 257, 259 (5th Cir. July 26, 2004) (*citing McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983)) (holding that mere verbal threats by a correctional officer do not amount to a constitutional violation).  Moreover, as plaintiff had already been informed that the matter was being reviewed by the SIS (*see* Southerland Decl. ¶ 4; Pleasant Decl. ¶ 4), any further attempts by plaintiff to retrieve his property outside of this process would certainly have been disruptive to the prison environment.  Plaintiff also contends that his placement into administrative detention on August 8, 2006[19] denied him access to the courts.  However, this placement occurred some eight months after the alleged deprivation of

---

[18]   Indeed, there were numerous federal lawsuits filed by other inmates at FCC Yazoo City during the relevant time period, before plaintiff filed the instant lawsuit on August 16, 2007.  *See, e.g., Murray v. Reese*, 5:06cv9 (S.D. Miss. filed Jan. 23, 2006); *Benitez v. Reese*, 5:06cv22 (S.D. Miss. filed Feb. 16, 2006); *Gates v. Reese*, 5:06cv28 (S.D. Miss. filed Mar. 6, 2006); *Bernard v. Reese*, 5:06cv57 (S.D. Miss. filed Apr. 6, 2006); *Crawford v. Reese*, 5:06cv76 (S.D. Miss. filed May 16, 2006); *Alford v. Reese*, 5:06cv95 (S.D. Miss. Filed June 21, 2006); *Sutton v. Reese*, 5:06cv106 (S.D. Miss. filed July 27, 2006); *Burroughs v. U.S. Parole Comm'n*, 5:06cv108 (S.D. Miss. Filed Aug. 4, 2006); *Moore v. Reese*, 5:06cv140 (S.D. Miss. filed Oct. 3, 2006); *Garcia v. Reese*, 5:06cv153 (S.D. Miss. filed Nov. 16, 2006); *Cinotti v. Reese*, 5:06cv184 (S.D. Miss. filed Dec. 15, 2006); *Bryant v. Reese*, 5:06cv189 (S.D. Miss. filed Jan. 18, 2007); *Banks v. Reese*, 5:07cv34 (S.D. Miss. filed Feb. 22, 2007); *Scott v. Reese*, 5:07cv45 (S.D. Miss. filed Mar. 28, 2007); *Herring v. Reese*, 5:07cv82 (S.D. Miss. filed Apr. 24, 2007); *Brooks v. Reese*, 5:07cv108 (S.D. Miss. filed May 21, 2007); *Mendez v. Reese*, 5:07cv129 (S.D. Miss. filed June 22, 2007); *Berry v. Reese*, 5:07cv144 (filed July 11, 2007).

[19]   It is unclear to the court whether this placement into administrative segregation was related to the dispute over plaintiff's property.

plaintiff's property and, according to plaintiff, lasted only 21 days.  *See* Plaintiff's Decl. ¶¶ 3, 19; Response to Motion for Summary Judgment at 19, 29, 37-40.  Plaintiff cannot establish that he was denied access to the courts during this brief period of time.

### Deprivation of Property Claim

Plaintiff claims that his property was taken and destroyed in violation of his due process rights.[20]  *See* Amended Cplt. ¶¶ 1, 22-24; Response to Motion for Summary Judgment at 19, 33-38; Response to Court Order ¶ 1.

It is well-established that neither negligent nor intentional deprivations of property by prison officials violate due process where there is an adequate post-deprivation remedy available. *Daniels v. Williams*, 474 U.S. 327 (1986); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).   There is such an adequate remedy available under the FTCA.  *See Gordon v. Day*, 172 Fed. Appx. 565, 567 (5th Cir. Mar. 22, 2006); *see also Williams v. Morris*, 2008 WL 112106, at  * 2 (E.D. Tex. Jan. 9, 2008) ("The Federal Tort Claims Act provides a federal inmate...with an adequate post-deprivation remedy.").  In addition, the BOP grievance procedure itself provides an adequate post-deprivation remedy.  *Williams*, 2008 WL 112106, at * 2 (*citing Phelps v. Winn*, 2007 WL 2872465 (D.Mass. Sept. 27, 2007); *Mendez v. FMC-Rochester*, 2007 WL 2320547 (D.Minn. Aug. 10, 2007); *Cyrus v. U.S.*, 2007 WL 80162 (M.D. Pa. Jan. 8, 2007)).  As discussed above, plaintiff has availed himself of both procedures; therefore, he certainly cannot argue that there is no adequate remedy available.

---

[20]   Specifically, plaintiff argues that he was wrongfully deprived of: a pre-deprivation hearing; an incident report; witnesses; a staff representative; the right to present evidence in rebuttal; a hearing examiner to review the facts of the violation; and the appellate process.  *See* Response to Motion for Summary Judgment at 19, 37.

Plaintiff also argues that the confiscation of his property violated various BOP program statements.[21]  *See* Response to Motion for Summary Judgment at 19, 31-32, 37.  However, "a prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met."  *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *see also Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986) (mere failure of prison officials to comply with their own regulation is not a constitutional violation); *McGowan v. Peel*, 2007 WL 710154, at * 1-2 (S.D. Miss. Mar. 6, 2007) (allegations of violation of Mississippi Department of Corrections' policies and procedures does not rise to level of constitutional violation); *Bates v. Helman*, 175 F.3d 1019, 1999 WL 160966, at * 3 (7th Cir. March 16, 1999) (BOP's violation of a Program Statement does not rise to the level of a constitutional violation).  Thus, petitioner cannot establish a constitutional violation based on the alleged violations of BOP program statements.[22]

## RECOMMENDATION

---

[21] Specifically, plaintiff argues that Program Statements 5580.07 and 5270.07 were violated. According to plaintiff, these Program Statements require that confiscated items be inventoried and a confiscation sheet be provided when property is taken; that defendants provide an incident report if contraband is found; and that defendants notify plaintiff that he has 120 days to present proof of ownership before property is destroyed.  An incident report *was* prepared - however, instead of being issued to plaintiff Kevin Thomas, it was issued by mistake to Kevin Turner, an inmate whose cell was close to plaintiff's.  *See* Response to Motion for Summary Judgment at 11; Plaintiff's Decl. ¶ 7;  Declaration of Kevin Thomas (Exhibit 5b to Joint Appendix Vol. I).

[22] Although defendants have also raised the defense of qualified immunity, "if it becomes evident that the plaintiff has failed to state or otherwise to establish a claim, then the defendant[s][are] entitled to dismissal on that basis."  *Wells v. Bonner*, 45 F.3d 90, 93 (5th Cir. 1993) (*citing Siegert v. Gilley*, 500 U.S. 226, 231-33 (1991)); *see also Sappington v. Bartee,* 195 F.3d 234, 236 (5th Cir. 1999).  Accordingly, having found that plaintiff's claims are not cognizable as constitutional claims, the court need not reach the question whether defendants are entitled to qualified immunity.  *Wells*, 45 F.3d at 93.

19

For the reasons stated above, it is the recommendation of this court that plaintiff's Motion to Strike [34] be denied, that defendants' Motion [58] to Strike Plaintiffs' Responses and Replies be denied as moot, that defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment [29] be granted, and that plaintiff's claims against defendants be dismissed with prejudice.

NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within ten days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party.  The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this court with instructions.  The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within ten days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected.  *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS, the 30th day of July, 2008.

s/ Michael T. Parker
United States Magistrate Judge